**DUNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

| | |
|---|---|
| DEREK IACCARINO<br>805 London Court<br>Frederick, MD 21701<br><br>and<br><br>CARLOS CASTILLO<br>804 Meadowmeade Drive SE<br>Ada, MI 49301<br><br>Plaintiffs,<br><br>v.<br><br>JOHN F. KELLY, SECRETARY, UNITED STATES DEPARTMENT OF HOMELAND SECURITY, in his official capacity as well as his successors and assigns, 245 Murray Lane, SW, Washington, D.C. 20528;<br><br>and<br><br>VALERIE J. ATKINS, ASSISTANT DIRECTOR, CENTRALIZED TRAINING MANAGEMENT DIRECTORATE, FEDERAL LAW ENFORCEMENT TRAINING CENTER, U.S. DEPARTMENT OF HOMELAND SECURITY, in her official capacity as well as her successor and assigns, 1131 Chapel Crossing Road, Glynco, GA 31524;<br><br>and<br><br>CONNIE L. PATRICK, DIRECTOR FEDERAL LAW ENFORCEMENT TRAINING CENTER, U.S. DEPARTMENT OF HOMELAND SECURITY, in her official capacity as well as her successor and assigns, | CIVIL ACTION NO.______________ |

1131 Chapel Crossing Road, Glynco, )
GA 31524; )
)
Defendants. )
______________________________________)

## COMPLAINT

COMES NOW Plaintiffs Derek Iaccarino and Carlos Castillo, by their undersigned counsel, complains of Defendant United States Department of Homeland Security ("Defendant", "DHS", "Agency"), as follows:

## I. NATURE OF THE CASE

1. This is an action for review of the Defendants' Final Agency Decision, pursuant to the Administrative Procedures Act (APA), 5 U.S.C. § 701 *et seq.*.
2. The Plaintiffs seek declaratory relief and monetary damages against the Defendants in connection with the Final Agency Decisions denying the Plaintiffs' requests and appeals to overturn the Defendants' decision to expel them from training with the Defendant.
3. Plaintiffs assert that the Defendant's decision to expel them was arbitrary, capricious, and an abuse of discretion.

## II. JURISDICTION AND VENUE

4. This Court has jurisdiction over the claims pursuant to 5 U.S.C. §§ 701, 702 and 706(2).
5. Plaintiffs assert that they have exhausted all available administrative remedies and are properly before this Court to challenge the Defendant's Final Agency Decisions.
6. Venue is proper in this Court pursuant to 28 U.S.C. § 1391(e)(1), as amended, which provides for "a civil action in which a defendant is an officer or employee of the United States or any agency thereof acting in [their] official capacity . . ., or is an agency of the U.S., to be brought in any judicial district in which a defendant in the action resides." In this matter, the

Department of Homeland Security is headquartered within the jurisdiction of the U.S. District Court for the District of Columbia.

## III. PLAINTIFFS

7. Plaintiff Derek Iaccarino is a United States citizen and Veteran of the United States Marine Corps currently residing at 805 London Court, Frederick, MD, 21701. Mr. Iaccarino was employed as a Law Enforcement Specialist, GS-1801-05, within the Federal Protective Service ("FPS") of the National Protection and Programs Directorate, Department of Homeland Security ("DHS" or "Agency") and undergoing training at the Agency's Federal Law Enforcement Training Center in Glynco, GA at the time that the Agency expelled him from training on January 31, 2017.

8. Plaintiff Carlos Castillo is a United States citizen and Veteran of the United States Marine Corps currently residing at 804 Meadowmeade Drive SE, Ada, MI, 49301. Mr. Castillo was employed as a Law Enforcement Specialist, GS-1801-05, within the FPS of the National Protection and Programs Directorate, Department of Homeland Security ("DHS" or "Agency") and undergoing training at the Agency's Federal Law Enforcement Training Center in Glynco, GA at the time that the Agency expelled him from training on January 31, 2017.

9. Plaintiffs are properly joined in this action pursuant to Fed. R. Civ. P. 20(a)(1)(A), (B), as they are asserting rights to relief arising out of the same occurrence and share common questions of fact and law.

## IV. DEFENDANTS

10. Defendant John F. Kelly is the Secretary of the Department of Homeland Security and is named in his official capacity.

11. Defendant Valerie J. Atkins is the Assistant Director in the Centralized Training Management Directorate at the Agency's Federal Law Enforcement Training Center ("FLETC") in Glynco, Georgia, and is named in her official capacity. Defendant Atkins made and issued the Final Agency Decision in this matter.

12. Defendant Connie L. Patrick is the Director, FLETC and is named in her official capacity.

## V. BACKGROUND FACTUAL ALLEGATIONS

13. From July 2016 through January 31, 2017, Plaintiffs were probationary employees within FPS performing federal law enforcement training at the FLETC training facility in Glynco, GA.

14. Specifically, during times relevant to this complaint, Plaintiffs were enrolled in FLETC's Physical Security Training Program ("PSTP"), Class 602.

15. Prior to their expulsion from PSTP-602 on January 31, 2017, both Plaintiffs successfully completed all requirements for successful certification for PSTP and graduation with Class 602.

16. On the morning of January 21, 2017, Plaintiffs, along with 3 other trainees within the PSTP-602 class, were involved in an incident with FLETC security officers related to an alleged noise complaint.

17. At approximately 1:30am on January 21, 2017, Plaintiff Iaccarino, Plaintiff Castillo, and three other similarly situated trainees, Heather Chaney, Jesus Dominquez and Joshua Wood, were approached by FLETC security officers outside of Plaintiff Castillo's dormitory room on the second floor of FLETC building 71.

18. In addition to the Plaintiffs and the three other trainees from PSTP Class 602, two individuals from the Bureau of Prisons were also present at the time that the FLETC officers arrived.

19. The FLETC officers notified the group that there was an anonymous noise complaint but

refused to specify whether the complaint was specifically about them or others in the area as there were multiple gatherings in that building at that time.

20. The FLETC officers requested that the group provide two ID badges so that they could complete a written report on the noise violation and the two individuals from the Bureau of Prisons provided their badges/identification cards for the officers.

21. The FLETC officers continued to request the ID badges from the FPS trainees, including the Plaintiffs, despite having received two badges for their report from the Bureau of Prisons employees as originally requested.

22. The Plaintiffs and the other trainees responded that they had done nothing wrong and were not making noise and questioned whether they were required to provide their ID badges to the FLETC officers.

23. The FLETC officers refused to explain why they needed the trainees' ID badges beyond the fact that they were suspects of a noise complaint and reiterated the demand that the trainees turn over their ID badges.

24. Heather Cheney, one of the non-plaintiff FPS trainees, asked for a security Lieutenant to be called to the scene for the trainees to speak to directly.

25. After a Lieutenant arrived on the scene, the trainees again requested information as to why they were required to turn over their ID badges and the Lieutenant reiterated the demand without further explanation.

26. The trainees continued to ask why they were being targeted for the noise complaint, and asked to turn over their ID badges, when no attempt had been made to determine the true source of the noise complaint.

27. The Lieutenant refused to answer any of the trainees' questions and threatened to contact the

Glynn County Police Department if the trainees' did not turn over their ID badges. The Lieutenant then informed the trainees that he had contacted the police and they needed to wait for the police to arrive.

28. The trainees asked the Lieutenant and FLETC officers if they were being detained or whether they were free to leave but neither the Lieutenant nor the FLETC officers would respond.

29. After waiting for about one hour for police to arrive, the trainees attempted to depart the area but were told by the Lieutenant to "stay there" and the FLETC officers were blocking their path to leave the area.

30. The trainees again asked if they were being detained but neither the Lieutenant nor the FLETC officers would respond.

31. While awaiting the arrival of the police, the trainees, including the Plaintiffs, continued to request information as to what policies or rules they had violated and why they were being detained, without response.

32. The Lieutenant then stated that he had not contacted the police but instead they were waiting for someone to arrive to explain the policy to the trainees.

33. During this time period, one of the trainees, Jesus Dominguez, left the scene and was subsequently pursued by one of the FLETC officers. However, Mr. Dominguez was able to get away. Based on information and belief, no administrative action of any kind, up to and including expulsion from FLETC training, was taken against Mr. Dominguez.

34. When Plaintiff Iaccarino attempted to leave the scene, the Lieutenant ordered him to stay.

35. Thereafter, an individual arrived who identified himself as a FLETC Physical Security Specialist.

36. The FLETC Physical Security Specialist told the remaining four trainees to give their ID

badges to the FLETC officers, without explanation.

37. Plaintiff Iaccarino pleaded with the FLETC Physical Security Specialist for some explanation as to what policies or rules they had violated and why they were being included in the noise complaint report, particularly as the trainees had been told by the Lieutenant that the FLETC Physical Security Specialist would provide such an explanation.

38. The FLETC Physical Security Specialist then ordered the FLETC officers to detain Plaintiff Iaccarino and place him in handcuffs.

39. Plaintiff Iaccarino immediately took out his ID badge and surrendered it to the officers, indicating at the same time that he – and the other trainees – did not want the situation to escalate to this point but merely wanted an explanation.

40. The officers would not accept Plaintiff Iaccarino's ID badge and Plaintiff Iaccarino was forced to drop it on the floor as he complied with the order to turn around and put his hands behind his back to be handcuffed. Plaintiff Iaccarino attempted twice to provide his ID badge to the FLETC Physical Security Specialist, both by handing it to him and by dropping it as the officer would not take it directly.

41. Plaintiff Castillo then picked up Plaintiff Iaccarino's ID badge and handed it to one of the FLETC officers and reiterated that Plaintiff Iaccarino was not refusing to turn over his ID badge.

42. Plaintiff Castillo, and the other two trainees, both provided their ID Badges to the officers at this time.

43. Plaintiff Castillo also requested to fill out a witness statement and to file a formal complaint in regard to what had happened, including the detainment of Plaintiff Iaccarino.

44. Plaintiff Iaccarino was transported by the FLETC officers in one of the FLETC security

vehicles to FLETC building 93. Plaintiff Castillo followed separately to make a formal statement. Based upon information and belief, the other trainees, Ms. Chaney and Mr. Wood, were also brought to, or called to, FLETC building 93 to make statements.

45. Over the next 10 days, the Agency conducted an internal inquiry of the four trainees, including the Plaintiffs.

46. The four trainees, including both Plaintiffs, Ms. Chaney and Mr. Wood, engaged in the same or substantially similar conduct during the incident in question.

47. The Plaintiffs had completed all requirements to graduate with their class on January 31, 2017, but were held out of the graduation ceremony and did not receive a certificate of graduation or completion for the class.

48. On January 31, 2017, shortly after the graduation ceremony had taken place without the Plaintiffs, the Plaintiffs and Ms. Chaney were issued notices dated January 30, 2017, informing them that they were expelled from FLETC training. *See* Exhibits A, B.

49. The notices state that the Plaintiffs were being expelled from training for violating the standards of conduct and would not receive a graduation certificate for PSTP Class 620.

50. Due to their expulsion from training, the Plaintiffs would be permanently denied readmission to FLETC for any training program, effectively prohibiting any future employment as a federal law enforcement officer.

51. Consistent with the procedures outlined in their expulsion letter, the Plaintiffs submitted appeals to the Assistant Director, Centralized Training Management Directorate, FLETC within 10 days of receipt.

52. On February 8, 2017, the Plaintiffs were terminated from federal employment by the Defendants, in part due to their expulsion from training.

53. On March 10, 2017, Plaintiffs received decisions denying their appeals and upholding the expulsion from FLETC training. *See* Exhibits C, D.

54. Ms. Chaney appealed her expulsion like the Plaintiffs and her expulsion was reversed, meaning she is still eligible for future training at FLETC and future employment in a federal law enforcement position.

55. Based upon information and belief, Mr. Wood was not expelled from training.

56. Despite having engaged in the same conduct during the incident in question, namely not providing their ID badges and repeatedly requesting more information as to the reason they were being asked to turn over their ID badges and/or being included in the noise complaint report, the Plaintiffs received a significantly harsher penalty than the other two trainees.

## VI. FINAL AGENCY ACTION

57. The Defendant's decision letters, dated March 10, 2017, denying the Plaintiffs' appeals from their expulsion from training constituted final agency action under the Provisions of the APA. 5 U.S.C. § 704.

58. Plaintiffs received Defendant's final agency decisions on March 10, 2017. This lawsuit is filed within 60 days of the date of receipt.

## VII. CLAIMS

59. Defendants acted arbitrarily, capriciously and abused their authority by expelling the Plaintiffs from FLETC training. 5 U.S.C. §§ 702, 706(2)(a).

60. The penalty of expulsion from training, which denies the Plaintiffs the ability to ever take training at any FLETC facility, a requirement for all federal law enforcement positions, was unreasonable and significantly more severe than those penalties given to the other similarly situated trainees who engaged in the same alleged misconduct.

61. A review of the administrative record in this case will establish that the Defendant lacks a rational connection between the harsher penalty of expulsion for the Plaintiffs as compared to the final actions against the other trainees involved who engaged in the same conduct.

## VIII. PRAYER FOR RELIEF

Wherefore, the Plaintiffs respectfully request that the Court:

62. Declare the Defendants have acted arbitrarily and capriciously in violation of 5 U.S.C. § 706(2) in expelling the Plaintiffs from FLETC training.
63. Order the Defendants to rescind the expulsion actions from Plaintiffs' records of employment with the Defendants and issue a new final agency decision consistent with the less severe penalties issued to the other trainees involved in the incident leading to the Plaintiffs' expulsions.
64. Grant such other relief that this Court deems just, equitable and proper.
65. Award the Plaintiffs their attorney fees and costs, including costs under the Equal Access to Justice Act, or other applicable law.
66. Maintain jurisdiction over this action until the Defendants have complied with the Court's orders.

Date: May 9, 2017

RESPECTFULLY SUBMITTED,

Alan Lescht and Associates, P.C.

By: /s/ Matthew Estes

Matthew Estes [989814]
1050 17th Street, NW, Suite 400
Washington, DC 20036
Tel: (202) 463-6036

Fax: (202) 463-6067
matthew.estes@leschtlaw.com

*Counsel for Plaintiffs*

**TABLE OF EXHIBITS**

Notice of Expulsion to Derek Iaccarino, dated January 30, 2017………………………Exhibit A

Notice of Expulsion to Carlos Castillo, dated January 20, 2017……………………….. .Exhibit B

Final Agency Decision for Derek Iaccarino, dated March 10, 2017……………………..Exhibit C

Final Agency Decision for Carlos Castillo, dated March 10, 2017………………………Exhibit D